IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DAVID CRAMER, | ) | CIV. NO. 09-00223 SOM/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT CITY |
| | ) | AND COUNTY OF HONOLULU'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT; |
| | ) | ORDER GRANTING DEFENDANT |
| CITY AND COUNTY OF HONOLULU; | ) | HENRY ENG'S MOTION TO DISMISS |
| HENRY ENG; STATE OF HAWAII; | ) | |
| JOHN DOES 1-10 JANE DOES 1- | ) | |
| 10; DOE CORPORATIONS; DOE | ) | |
| PARTNERSHIPS 1-10; AND DOE | ) | |
| GOVERNMENT ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT CITY AND COUNTY OF
HONOLULU'S MOTION FOR SUMMARY JUDGMENT; ORDER
GRANTING DEFENDANT HENRY ENG'S MOTION TO DISMISS

I.      INTRODUCTION.

Plaintiff David Cramer lives near Poailani Inc. ("Poailani"), a residential facility that offers treatment for individuals diagnosed with behavioral health issues and addictions to drugs and other substances.  Cramer says, "Poailani, with the acquiescence, support, and blessings of the City and County of Honolulu, and the State of Hawaii, have harmed Mr. Cramer economically, essentially rendering Mr. Cramer's property without value."  Defendant City and County of Honolulu ("the City") moves for summary judgment, and Defendant Henry Eng ("Eng"), the former Director of the City's Department of Planning and Permitting, moves for dismissal.  This court grants both

motions.

II.     STANDARD OF REVIEW.

     A.     Motion for Summary Judgment

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law."

Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987. This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."[1] Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003).

B.     Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light

---

[1] After the hearing on the present motions, Cramer himself sent a letter to the court saying that he was waiving the attorney-client privilege. He sent copies of the letter to his attorney and to opposing counsel and attached to his letter some communications with his attorney. In one communication to Cramer, Cramer's attorney misstated the summary judgment standard, asserting that the court had to accept all of Cramer's allegations as true. As noted later in this order, factual and well-pled allegations, unless plainly implausible, must be accepted as true on a motion to dismiss, but not on a motion for summary judgment.

most favorable to the nonmoving party.  <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).

To withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1940 (2009).  Although on a motion to dismiss the court must accept all well-pled factual allegations as true, "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>  Nor must the court "accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> (quotations omitted).

III.     BACKGROUND.

In March 2004, Cramer applied for a building permit from the City's Department of Planning and Permitting ("DPP") to add a master bedroom and bathroom, deck, and carport to his property.  Timothy F. T. Hiu Decl. ¶ 7, attached to City's

Concise Statement.

Upon receipt of a building permit application, the City's practice is to route the application to other DPP branches to ensure that the proposed construction complies with laws and regulations.  Id. ¶ 4.  If a deficiency is found in an application, the reviewing branch returns the application to the applicant for correction.  Id. ¶ 5.

The DPP routed Cramer's application to various DPP branches that found deficiencies and returned the application to Cramer for correction.  Exs. K & R, attached to City's Concise Statement.  In May 2005, fourteen months after Cramer had initially applied for a building permit, his application was approved.  Hiu Decl. ¶ 28.

In 2006, Poailani bought the property near Cramer's residence.  Ex. C, attached to City's Concise Statement. Poailani bought the Abamonga Care Home, which had provided mental health treatment services and had been allowed to operate under a conditional use permit granted in 1987.  Ex. B, attached to City's Concise Statement.  Poailani sought to operate as a residential treatment facility for persons with behavioral health issues and substance abuse addiction.  Exs. Q-2 & S, attached to City's Concise Statement.

Shortly after it acquired the property, Poailani requested a modification of the conditional use permit.  Poailani

5

sought to (1) reflect the change of operator from Abamonga Care Home to Poailani; (2) decrease the number of clients; (3) change the nature of the provided services from an adult residential home to an independent living program for individuals recovering from substance abuse problems; and (4) enclose an unfinished first floor.  Ex. I, attached to City's Concise Statement.  The DPP approved this minor modification[2] on August 25, 2006.  In approving the modification, the DPP stated that "approval of this minor modification does not constitute approval of any other permits such as building permits."  Id. at 4.

In 2006, Poailani also applied for two building permits so that it could make repairs and adjustments to the property. As the DPP received Poailani's applications at the same time and they involved related work, the DPP processed them together.  Hiu Decl. ¶ 33.  The DPP routed Poailani's applications to various branches that, after finding them defective, returned them to Poailani with comments explaining the deficiencies.  Poailani responded to the comments and resubmitted its applications. However, after a DPP branch again returned the applications to Poailani seeking additional information, Poailani did not resubmit any form.  Hiu Decl. ¶ 37.  In November 2009, Poailani formally withdrew its applications.  Ex. N, attached to City's

---

[2]The document is incorrectly titled a "Major Modification." Ex. I, attached to City's Concise Statement.  See Peirson Decl. ¶ 21.

Concise Statement.

In August 2007, Poailani sought another building permit to remove an office, patio, and stairs. The permit issued in November 2007. Exs. O & P, attached to City's Concise statement.

On May 18, 2009, Cramer filed his Complaint in this court. Cramer says that Poailani's operation has rendered his property worthless. He claims that, at the time he bought his home, the facility primarily served the elderly, who "were highly unlikely to commit crimes of violence on their neighbors." Compl. ¶ 8. However, according to Cramer, since Poailani has been operating, what once was a "peaceful, safe, and quiet neighborhood" has become one filled with "drug addicts and other mentally unstable or ill people." Compl. at 5.

Cramer asserts three claims. First, he says that his equal protection rights were violated when his building permit application was not approved as quickly as Poailani's. Second, he seeks to enjoin the City from issuing future permits. Id. ¶ 56. Third, he complains that his property was taken without just compensation. Id. ¶ 59.

After Cramer filed his Complaint, Poailani applied for another minor modification of the conditional use permit. Poailani sought to change the nature of its services from an adult residential care home to a licensed, specialized, 24-hour program for persons with alcohol/drug problems and behavioral

health issues. Ex. S at 3, attached to City's Concise Statement. The application was approved in November 2009. Id. Cramer appealed that decision. His appeal is currently pending before the Zoning Board of Appeals. Peirson Decl. ¶ 32, attached to City's Concise Statement.

The City now moves for summary judgment. Eng moves to dismiss, saying that he is not a proper party to this lawsuit.

Cramer and his attorney have had a rocky relationship in this case. While this court has concerns about the level of counsel's communication with Cramer, the court does not discern a reason to conclude that this court's substantive ruling would be different but for those communication problems. There are other forums to which Cramer may take any complaints he may have about his attorney.[3]

IV.     ANALYSIS.

    A.     The City Is Entitled to Summary Judgment.

Cramer says that he was denied the equal protection of the laws, that the City should be enjoined from issuing permits, and that he has been deprived of all economic value of his property. None of Cramer's claims survives the City's motion for

---

[3] Cramer complains that his attorney told him that Cramer's attendance at the hearing on the present motions was an option, not a requirement. Cramer appears to think his counsel was inaccurate in this regard. This court did, in fact, direct counsel to tell Cramer that he could (but did not have to) attend the hearing in person or by phone.

summary judgment.[4]

                1.      Cramer Does Not Show That He Has a Triable Equal Protection Claim.

According to Cramer, his building permit request took much longer to be approved than Poailani's. Cramer says that this delay denied him the equal protection of the laws. Cramer has no factual or legal support for this claim.

The Equal Protection Clause protects persons from a state's intentional and arbitrary discrimination and strives to ensure that all persons similarly situated are treated alike. Village of Willowbrook v. Olech, 528 U.S. 562, 565 (2000); City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish an equal protection violation, a plaintiff must show that the defendant treated him differently from other similarly situated individuals. Dillingham v. INS, 267 F.3d 996, 1007 (9th Cir. 2001). Under equal protection analysis, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." Heller v. Doe, 509 U.S. 312, 319 (1993).

Cramer equates himself, an individual resident, to Poailani, a company that runs a treatment center. Cramer

---

[4]Defendant State of Hawaii has not filed any motion. It may be that the State was not properly served with the Complaint. This court's reasons for granting the City's summary judgment motion apply to the State of Hawaii, which may also be entitled to judgment under different theories, such as sovereign immunity.

requested a building permit to make significant additions to his existing one-story, single-family dwelling in 2004, see Ex. K, whereas Poailani, in 2006, sought to repair a two-story dwelling, see Ex. M, attached to City's Concise Statement.  It is not at all clear that the permit applications were similar.

Even if Cramer and Poailani should be treated similarly, Cramer does not show that they were treated differently.  Poailani's request, like Cramer's, was deficient.  DPP branches asked for revision and clarification of both Poailani's and Cramer's requests.  Cramer's permit request was approved after fourteen months and numerous revisions, whereas Poailani's first request was never approved and instead was withdrawn.[5]  The undisputed evidence in the record establishes that the City followed its practice of ensuring that any proposed building was in compliance with laws and regulations.  The DPP has an "automatic approval response time" in which to approve or deny building permit applications, and the DPP acted within this time frame when reviewing Cramer's submissions.  Hiu Decl. ¶ 30.  Cramer did not contest the City's Concise Statement of Facts, which states that "DPP processed [Cramer's] application using its

---

[5]Cramer complains that the City approved Poailani's request before his, even though Poailani's was filed after Cramer's.  Compl. ¶ 12.  There is no evidence that Poailani submitted any building request in 2004 or 2005, when Cramer's building request was pending.  To the contrary, Poailani's building request was submitted in 2006 and never approved, while Cramer's request was submitted in 2004 and approved in 2005.

standard procedures and did not subject [Cramer] or his application to discriminatory or disparate treatment." City's Concise Statement ¶ 30. Accordingly, he has no triable issue relating to his equal protection claim.

> 2. Cramer Presents No Evidence of Irreparable Harm Entitling Him to Injunctive Relief.

Cramer says, "The actions of Defendants in regard to the Application and Permit . . . have irreparably harmed Plaintiff and will continue to irreparably harm Plaintiff unless the Court enjoins Defendants from any further actions related to the approval of any future permits and/or licenses." Compl. ¶ 56. Cramer says that he has been harmed because his property value has decreased. Cramer presents no evidence of irreparable harm entitling him to injunctive relief.

The standard for granting a permanent injunction is essentially the same as for granting a preliminary injunction, except that a party seeking a permanent injunction must prove actual success on the merits as opposed to merely showing a likelihood of success on the merits. Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987). A plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in

11

>       equity is warranted; and (4) that the public
>       interest would not be disserved by a
>       permanent injunction.

eBay Inc. v. MercExhange, LLC, 547 U.S. 388, 391 (2006); see also Geertson Seed Farms v. Johanns, 570 F.3d 1130, 1136 (9th Cir. 2009) (applying the four-part test for permanent injunctive relief). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." eBay Inc., 547 U.S. at 391.

Cramer presents no evidence of an irreparable injury. He has not presented any admissible evidence that the property value of his house has diminished to the point that there has been or will be a taking, or that there has been any decrease in value caused by the conditional use permit modification.

        3.        Cramer Does Not Show That He Has a Triable Takings Claim.

In arguing that Defendants' actions have resulted in an unconstitutional taking, Cramer appears to view the City's grant of the conditional use permit in 1987, and the amendment of that permit in 2006, as arbitrary. He also appears to be challenging the City's allowance of an amendment to that permit in November 2009. Cramer's arguments fail.

First, Cramer contends that the City engaged in arbitrary and capricious decision making in 1987 when it granted the application by Abamonga Care Home (the previous owner) for a conditional use permit without supporting its decision with

"scientific evidence" of the effects of allowing a residential care facility to operate in the neighborhood. Compl. at 6. He complains that the permit was approved "without public input and without conducting appropriate studies to determine the economic and social impact the activities of Poailani would have on the immediate neighborhood." Compl. at 4. He also argues that the City's approval of an amendment in 2006 was flawed.

To the extent Cramer challenges the City's initial grant of the conditional use permit in 1986, the court questions the timeliness of any challenge. However, the court need not rely on any limitation issue, as a more fundamental problem bars Cramer's challenges to both the 1986 permit and the 2006 amendment to the permit. The Zoning Board of Appeals is the body with authority to review agency decisions involving the City's Land Use Ordinance, and Cramer must exhaust administrative remedies and appeal the decision to the Zoning Board of Appeals before bringing suit. See Revised Charter of Honolulu § 6-1516 (2001) (providing that the ZBA shall "hear and determine appeals from the actions of the director"); see also Revised Ordinances of Honolulu ("ROH") § 21-1.40 (noting that appeals of actions by the DPP Director shall be to the ZBA and shall be filed within thirty days of a decision). "A party's failure to timely request an agency review hearing not only bars the agency from considering that request, but also precludes the circuit court

from considering an appeal of the administrative decision." Tenneco v. Dep't of Hawaiian Home Lands, 106 Haw. 246, 249, 103 P.3d 406, 409 (Haw. Ct. App. 2004). And, even had he exhausted administrative remedies, he does not show that an appeal from a ZBA decision would be proper in this court. See Haw. Rev. Stat. § 91-14 (proceedings or review of an administrative ruling shall be instituted in the circuit court). What is clear is that Cramer may not challenge the permit at this time, given his failure to exhaust administrative remedies.

At the hearing on this motion, Cramer said that he was bringing a facial challenge to the Land Use Ordinance and therefore does not need to exhaust administrative remedies. He says, "The challenge here, however, is to the Land Use Ordinance itself and whether or not it is constitutional as regards to the issue of it being a law that permits the government to take private property without just compensation to its rightful owner." Opposition at 11. Even putting aside the absence of a facial challenge in the allegations in Cramer's Complaint, the court finds the purported facial challenge to be entirely without merit.

"A facial challenge involves a 'claim that the mere enactment of a statute constitutes a taking,' while an as-applied challenge involves 'a claim that the particular impact of a government action on a specific piece of property requires the

payment of just compensation.'" Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 686 (9th Cir. 1993) (quoting Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 494 (1987). The ordinance on its face does not deprive Cramer of his property. The Land Use Ordinance states:

> (a) The director may allow a conditional use on a finding that the proposed use satisfies the following criteria:
>
> > (1) The proposed use is permitted as a conditional use in the underlying zoning district and conforms to the requirements of this chapter.
> >
> > (2) The site is suitable for the proposed use considering size, shape, location, topography, infrastructure and natural features.
> >
> > (3) The proposed use will not alter the character of the surrounding area in a manner substantially limiting, impairing or precluding the use of surrounding properties for the principal uses permitted in the underlying zoning district.
> >
> > (4) The use at its proposed location will provide a service or facility which will contribute to the general welfare of the community-at-large or surrounding neighborhood.

ROH § 21-2.90-2. Nothing in the ordinance takes anything from Cramer.

Cramer also appears to be complaining that the DPP inappropriately permitted an amendment of the conditional use

15

permit in 2009, after Cramer had filed suit.  Ex. S, attached to City's Concise Statement.  Leaving aside the absence of any claim regarding the 2009 amendment from his Complaint, Cramer may not challenge that amendment in court given the pendency of his appeal before the ZBA.  Ex. I, attached to City's Concise Statement.  No court may entertain a claim about the legality of that decision while Cramer's appeal is pending.

        B.       <u>This Court Grants Eng's Motion to Dismiss.</u>

Cramer says that Eng acted unlawfully when, as the DPP Director, he failed to allow public input before granting modification of the conditional use permit in 2006.  Cramer complains that "Eng is an agent of the County, acting under color of law" and therefore liable under § 1983.  Compl. ¶ 3.  Eng counters that claims against him should be dismissed because they are duplicative of the claims Cramer asserts against the City.  Moreover, Eng is no longer the DPP Director.  Cramer responds that "it was Eng's individual conduct, conduct which may or may not have been sanctioned by employer, which harmed Mr. Cramer."  Opposition at 3.  At the same time, he says, "The employer [the City] is named because the employer is also liable for the acts and or omissions of its agents which cause harm to others."  <u>Id.</u>  Cramer's papers thus suggest that Cramer is suing Eng in both his official and individual capacities.  However, at the hearing on the present motions, Cramer's counsel clarified that Cramer is

16

suing Eng in his official capacity only.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Kreines v. United States, 33 F.3d 1105, 1107 (9th Cir. 1994). While "[a] victory in a personal-capacity action is a victory against the individual, rather than against the entity that employs him," Graham, 473 U.S. at 167-68, a victory in an official capacity suit is equivalent to a suit against the governmental entity itself. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in his official capacity, the officer named in his official capacity is a redundant defendant and may be dismissed." King v. McKnight, 2008 WL 314407, *5 (E.D. Cal. 2008); accord Wong v. City & County of Honolulu, 333 F. Supp. 2d 942, 947 (D. Haw. 2004). Cramer's claims against Eng in his official capacity are dismissed.

Even had Cramer's counsel not stated at the hearing that he was suing Eng in his official capacity only, this court would not countenance claims by Cramer against Eng in his individual capacity. In Kentucky v. Graham, the Supreme Court explained that individual-capacity suits under § 1983 seek to impose personal liability upon a government official for actions

taken under color of state law. To establish a § 1983 claim, a plaintiff must show that the defendant both acted under color of state law and personally deprived the plaintiff of a federal or constitutional right. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). As Cramer has not alleged in his Complaint that Eng personally deprived Cramer of any federal or constitutional right, he may not maintain a claim against Eng in his individual capacity. See Edgerly v. City and County of San Francisco, 599 F.3d 946, 961 (9th Cir. 2010) (noting that supervisorial liability under § 1983 exists only when the supervisor "was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation") (quotations omitted).

V.      CONCLUSION.

The court grants both the City's motion for summary judgment and Eng's motion to dismiss the Complaint. No other Defendants having appeared in this case, the Clerk of Court is directed to enter judgment for Defendants and to close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii June 23, 2010



                        /s/ Susan Oki Mollway
                        Susan Oki Mollway
                        Chief United States District Judge

Cramer v. City and County of Honolulu, et al, 09cv223; Order Granting Defendant City and County of Honolulu's Motion for Summary Judgment; Order Granting Defendant Henry Eng's Motion to Dismiss